Nathaniel WADE, Plaintiff,

v.

Bill ARMONTROUT, Defendant.

No. 84–861C(5).

United States District Court,
E.D. Missouri.

March 23, 1987.

Edward J. Griesedick, Jr., Thomas P. O'Driscoll, Clayton, Mo., for plaintiff.

John Ashcroft, Atty. Gen., Elizabeth A. Levin, Patricia Perkins, Stephen Hawke, Jefferson City, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER

LIMBAUGH, District Judge.

This case originated with the filing by petitioner, a state prisoner, of a 28 U.S.C. § 2254 petition for writ of habeas corpus. The matter was referred to a Magistrate for recommendation and this Court adopted the findings of the Magistrate and dismissed the claim. In his claim, petitioner urged five points wherein he argued his constitutional rights were violated in a State of Missouri court proceedings. The United States Court of Appeals for the Eighth Circuit affirmed the original dismissal of this Court in part and reversed in part. The Court affirmed dismissal of three of the five allegations and overruled the dismissal as to the remaining two. In its opinion, the Court of Appeals remanded the case to this Court for trial to determine whether the lack of proper investigation denied petitioner his right to effective assistance of counsel at the state trial and whether the state trial court's denial of petitioner's request for a continuance was so egregious that it was fundamentally un-

fair. *Wade v. Armontrout*, 798 F.2d 304, 307 and 308 (8th Cir.1986).

Pursuant to the mandate of the Court of Appeals, an evidentiary hearing was had before the Court and this opinion constitutes the Court's findings of fact and conclusions of law pursuant to rule.

The Court finds that the petition for writ of habeas corpus should be dismissed because petitioner was not denied effective assistance of counsel and the Missouri trial court did not abuse its discretion in denying a request for continuance.

The Court adopts certain findings of the Eighth Circuit as they are supported by the evidence now before the trial court, *Wade v. Armontrout, supra,* pp. 305 and 306, all as follows:

> On the evening of March 28, 1982, a police officer was dispatched to check out a report of prowlers at the Roadway Terminal in St. Louis, Missouri. The officer observed an individual running from the terminal lot to a station wagon. He saw the individual place something in the back of the car and then enter on the passenger side of the car. The officer stopped the car and observed approximately ninety items of assorted clothing contained in cellophane bags scattered in the rear of the car. Roadway personnel stated that some of the clothing in the car had been stolen from the terminal. Both Wade, the driver of the car, and Willie Dean, the passenger, were arrested.

> The indictment was filed on June 11, 1982, and a public defender was appointed to represent Wade. Trial was set for July 26, 1982. Five continuances were granted; four were at Wade's request. On December 15, 1982, the public defender officer was granted leave to withdraw because of a conflict of interest, and the special assistant public defender officer was appointed to represent Wade. On December 28, 1982, Wade's counsel entered an appearance on his behalf. Trial was set for January 18, 1983.

> Counsel started working for the special assistant public defender office, her first employment as an attorney, on December 16, 1982. She had approximately three weeks to prepare the case. On the day of trial, counsel informed the court that she was not prepared to try the case because she had visited with Wade only once, had not interviewed any of the state's witnesses, and had not visited the scene of the alleged offense. The court denied the motion for continuance, but granted counsel an opportunity to interview each state witness for five minutes before the witness testified. She also had the opportunity to interrogate the arresting officer in a pretrial suppression hearing.

At the hearing in this matter, Wade testified that shortly before the incident of March 28, 1982, he had been staying at his mother's house and had left to purchase merchandise at an ice cream store. On his return, he stated that his mother told him a Willie Dean had called and his car had broken down and he wanted Wade to assist him. Dean called again and Wade responded by driving his mother's car to the location from which Dean had called near Broadway and Buchanan streets. Dean entered Wade's car and they drove to a place where Dean's car was parked in a nearby area but which could not be specifically identified by Wade. Wade stated that he assisted Dean with the use of jumper cables in an attempt to start the engine in Dean's car, all to no avail. Wade then testified that Dean asked him to place some merchandise in Wade's automobile from Dean's car and Wade consented. The parties were ultimately apprehended in Wade's car as described hereinbefore.

Willie Dean testified that at the time in question, he was driving a stolen car which had developed battery and other mechanical problems causing it to be inoperable. He called Wade and gave the message to his mother, and a few minutes later called back and talked to Wade personally. In response to the call, Wade drove his mother's car to pick up Dean in the vicinity of the Roadway terminal. Before that time, an unidentified party had agreed with Dean to make certain packages of clothing apparently stolen from the terminal available to

Dean by placing the clothing in or about a trailer on or near the terminal property. Dean placed this material in his stolen vehicle and thereafter developed the mechanical problems. Dean was not present when Wade testified and Dean denied that Wade attempted to start the engine of Dean's car by the use of battery cables. Dean did aver that when the parties arrived at Dean's car, the stolen merchandise was placed in Wade's car and the parties were subsequently apprehended with this merchandise in Wade's car.

Dean had a record of two prior felony convictions and he and Wade were charged with the crime of stealing, (third offense), in violation of § 570.040 R.S.Mo. Dean plea-bargained in that and other charges he was involved with and ultimately entered a plea of guilty to that charge. He testified that he would have made this information available by personal testimony in Wade's trial had he been subpoenaed but no one discussed this with him.

Jane Phillips, Wade's attorney in the state of Missouri trial was called by plaintiff and testified. She received her legal education at St. Louis University School of Law and was admitted to practice in the State of Missouri in September, 1980. Before trying Wade's case, she had two years experience as a public defender in St. Louis County, and had tried seven felony jury cases to completion and numerous misdemeanor cases. She stated that she interviewed Wade at the city workhouse and probably spent as much as an hour with him on January 5, 1983, shortly after her entering an appearance in the case. At the interview, she received all the information that Wade had concerning the nature of his defense and as to the facts known to him. Wade also related to her all information he had available concerning his background and family and surroundings. Wade told her that Dean had admitted to him he had stolen the articles of clothing involved and that Dean wanted him to assist in removing the clothing from the scene. At once Phillips was concerned with the potential charge that could be levied against Wade of receiving stolen property which charge

is in the same penalty category as that of stealing in violation of § 570.040 R.S.Mo.

Following the interview, Phillips filed a motion to suppress evidence involving the clothing found in Wade's car and statements that Wade apparently made to arresting officers. The theory was that there was no probable cause for the arresting officers to stop Wade's vehicle or to search and seize the merchandise therein. There was an evidentiary hearing on this motion, and at the hearing, Phillips fully availed herself of the opportunity to cross-examine the arresting officer involved and obtain all of the information he had. The motion to suppress was overruled and trial of the case began January 18, 1983. Before that time, Phillips had prepared herself to conduct the voir dire and to cross-examine the witnesses of the State, and had prepared some instructions to tender to the trial court. She admitted that she had been given forty-six case files to defend when she first started her job three weeks before being appointed to handle the Wade case. She was emotionally unprepared to try the Wade case, but was legally prepared.

Immediately before trial she filed a motion for continuance which was denied. In that motion, and in post-trial motions, and on appeal Phillips argued on Wade's behalf that Wade was prejudiced because Phillips did not have sufficient time to prepare the case and was not ready adequately to represent Wade's best interests when the trial began January 18, 1983. Nevertheless, Phillips was vigorous in the performance of her defense duties and the record reveals that she performed adequately at the time of the trial. Phillips averred that simply because she alleged her unpreparedness for trial in the various motions, she did so because of the necessary duty to her client. She felt she was prepared legally to provide an adequate defense for Wade and did so. She testified that legal strategy dictated recommendations that she made to Wade and her own course of professional conduct. For illustration, Wade complains that Phillips did not interview his mother or Willie Dean nor did she call them to testify on Wade's behalf. He urges further that

Phillips discouraged him from testifying personally and he reluctantly followed her advice.

■ Phillips explained that Wade's mother attended the entire three-day trial and that she talked on several occasions with his mother, and that neither Wade nor his mother indicated that she had information which would be beneficial to Wade at the trial. Without objection Phillips testified that Wade's mother told her in prior conversations that she owned the vehicle Wade was driving when arrested and that she refused to sign his bond or to use her real estate as security for her son's bond. Wade's mother told Phillips that she did an excellent job at the trial and how effective it could have been if Wade had been innocent. This Court believes the testimony of Phillips and finds, in any event, that strategically it would have been of little or no advantage and possibly a detriment had Wade's mother testified. The only thing she could have said that might have helped Wade was that Dean had called indicating that he had automobile trouble. Other than that, Wade's mother would have placed her son driving in his automobile going to Dean's relief at or near the time of the arrest and Wade was arrested in the vehicle with the stolen goods at the time in question in any event. The Court finds, therefore, that Phillips did confer with Wade's mother and that her not being called to testify on her son's behalf whatever the reason, did not prejudice Wade.

■ Phillips testified further that her decision not to interview Dean or to call him as a witness was judgmental and proper. According to the information Wade had given her, Dean through his testimony, would implicate Wade directly on the charge of receiving stolen property. To have had him testify would have jeopardized Wade as to that offense. In addition, Dean had a prior record and was a co-defendant in this case. Phillips' conclusion was that "Willie Dean's testimony would have buried Nathaniel Wade". This Court concurs and finds that the failure of Phillips to interview Dean or to call him as a witness did not prejudice Wade.

■ Immediately before trial, Phillips admittedly had not had an opportunity to examine documents to be introduced by the State or to interview the State's witnesses. The Court, while denying the request for a continuance, did give Phillips an opportunity to examine these documents and to interview the witnesses for the State which she did, albeit briefly. The witnesses were the arresting officer who Phillips had previously cross-examined at the motion hearing, two victim employees, a dock hand and another woman. The arresting officer was the principal witness involved and the other witnesses were those connected primarily with the documentation and identification of the stolen merchandise.

This Court appreciates but does not condone the position that Phillips was in when she tried this lawsuit and pursued it through appeal. As in most cases, she must do what she can with the available material that she has all the while practicing defensively knowing full well that her own integrity and competency will be placed at issue at some time in post-trial motions or in subsequent legal proceedings such as these. This Court deplores these set of circumstances, but finds they are commonplace in this area of legal practice. The Court is concerned that the excessive loads placed upon members of public defenders sometimes requires them to cut corners and to try lawsuits protecting defendant's rights when they may not be emotionally equipped to do so. The Court believes in this instance, however, the judgmental decisions complained of by Wade are not well grounded in fact or law and that Phillips' representation of Wade did not constitute an abuse of any of Wade's constitutional rights, nor was Wade denied of his right to effective assistance of counsel at trial. This Court finds from an examination of all of the evidence before it that had Phillips interrogated more thoroughly all of the parties involved and performed additional investigation, it would have been of little or no additional assistance to Wade in the presentation of his defense. The decision of Phillips to defend on the issue of probable cause was proper and in Wade's best interests at the time.

As stated, that course of conduct was probably Wade's only possibility of convincing a jury of his innocence of the crime for which he was charged or any other associated crime.

■ This Court also finds that the trial court's denial of the request of Phillips on behalf of Wade for a continuance on January 18, 1983, was not so egregious that it was fundamentally unfair. Although the crime for which Wade was being tried occurred March 28, 1982, his trial did not begin until January 19, 1983. In the interim, Wade was incarcerated and obviously was not having the advantage of a quick trial. The case had been set five previous times and four continuances as previously found were at Wade's request and granted. In view of the fact that the Court has found that Wade's attorney was, in fact, able to provide him with effective assistance at trial and in view of the other circumstances involved, the denial of the January 18, 1983, request for continuance was not fundamentally unfair.

The Court believes that this case is illustrative of the premise that the providing of constitutional rights to our citizens is not always easy. Busy attorneys must provide effective legal assistance for defendants at trial. They full well realize that before there is a finality to any case they may be the subject of a suit for malpractice or other relief for their client. Accordingly, they are obliged in pre-trial and in post-trial proceedings to assert defenses such as their inability to be prepared for trial all the while knowing that they can, in fact, present an adequate representation of their client's best interests should they be required to go to trial. Does counsel interview and call witnesses to testify who in counsel's judgment will obviously be detrimental to the defense? Does counsel follow the directives of a defendant/client as to how to handle, manage and try a lawsuit knowing that that course of action may be extremely harmful to defendant? Obviously, these questions and their answers challenge the very workability of our system of the administration of justice. Whatever the answers may be, it appears obvious that solutions are laboriously found on a case to case basis.

Wade has not shown that his attorney failed to provide the skill and diligence that a reasonably competent attorney would exercise under similar circumstances which resulted in prejudice to his defense, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Kellogg v. Scurr*, 741 F.2d 1099, 1100 (8th Cir.1984); nor has he shown that the state court's refusal to grant a continuance was so egregious that it was fundamentally unfair. As plaintiff was not prejudiced in this matter as charged,

IT IS HEREBY ORDERED AND ADJUDGED that plaintiff's petition for writ of habeas corpus be DISMISSED.